Sandoz, Sandoz & Schiff, Gerald H. Schiff, Opelousas, La., for defendant-appellee.

Before BROWN, COLEMAN and GEE, Circuit Judges.

PER CURIAM:

The question in this case is whether a trustee acting at the direction of a bankruptcy judge is clothed with absolute immunity against tort actions grounded on his conduct as trustee.

The appellants, Ervin and Margie Boullion, filed bankruptcy petitions in June, 1976. The bankruptcy judge appointed William McClanahan, the appellee, as receiver and later as trustee of the Boullion estate. None of the orders of the bankruptcy judge were challenged by a direct appeal. Instead, the Boullions filed a diversity action in federal district court alleging that McClanahan had violated his fiduciary duties as trustee by (1) recommending an inexperienced appraiser; (2) allowing the filing of an incorrect appraisal; (3) improperly handling sales of the estate property; and (4) failing to surrender disclaimed and exempt assets.

All of McClanahan's actions were approved by orders of the bankruptcy judge.

McClanahan moved for summary judgment on the ground that as a trustee appointed by the bankruptcy judge and as to actions directed or approved by that judge he was entitled to absolute immunity. Summary judgment was granted.

The Supreme Court has stated: "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction ... [citation omitted]." *Pierson v. Ray*, 386 U.S. 547, 553, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). This immunity is not lost even though "the action [the judge] took was in error, was done maliciously, or was in excess of his authority...." *Stump v. Spark-*

*man*, 435 U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978).

In the instant case the court-appointed trustee was acting under the supervision and subject to the orders of the bankruptcy judge. We hold that since McClanahan, as an arm of the Court, sought and obtained court approval of his actions, he is entitled to derived immunity. *McCray v. State of Maryland*, 456 F.2d 1 (4th Cir. 1972); *T & W Investment Company, Inc. v. Kurtz*, 588 F.2d 801 (10th Cir. 1978); *Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1 (1st Cir. 1976); *Bradford Audio Corp. v. Pious*, 392 F.2d 67 (2d Cir. 1968); *Smallwood v. United States*, 358 F.Supp. 398 (E.D.Mo.1973), aff'd without opinion, 558 F.2d 1035 (8th Cir. 1977).

If the Boullions felt, as they later attempted to claim in an independent action, that the trustee and the bankruptcy judge had acted erroneously or wrongfully, they should have sought review, a course that was open to them as a matter of right.

By way of analogy, see also the recent decision of the Supreme Court in *Allen v. McCurry*, —— U.S. ——, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

The summary judgment entered by the District Court is

AFFIRMED.

**Victor Paul SOILEAU,
Plaintiff-Appellant,**

v.

**FORD MOTOR COMPANY,
Defendant-Appellee.**

No. 79–2056.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 9, 1981.

Rehearing Denied April 16, 1981.

Fusilier, Pucheu, Soileau & Coreil, Louis O. Fusilier, John Saunders, Ville Platte, La., for plaintiff-appellant.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, James E. Diaz, and Douglas Longman, Jr., Lafayette, La., for defendant-appellee.

Before WISDOM, AINSWORTH and GEE, Circuit Judges.

GEE, Circuit Judge:

Victor Paul Soileau ("Soileau") appeals from a jury verdict against him in a products liability suit he brought against Ford Motor Company ("Ford") for injuries he received in a car accident. Early on New Year's Day 1978, following New Year's Eve festivities during which he had been drinking moderately, Soileau was driving along a Louisiana highway in a Ford Torino with two passengers in the front seat. While attempting to round a 45-mile-per-hour curve at a speed estimated as high as 60 miles per hour, Soileau lost control of the car. After spinning around, the car backed into a concrete culvert at a high rate of speed. As the car spun, Soileau, who was not wearing a seat belt, was thrown to the right against the other passengers. After the impact with the culvert, the passenger seat collapsed, and Soileau wound up in the back seat with a broken neck and a damaged spinal cord.

Alleging that his injuries resulted from a design defect in the car seat that caused the seat to give way upon impact, Soileau brought suit against Ford in a Louisiana state court for damages attending his injuries. Ford removed the case to a federal district court in the Western District of Louisiana. There the case was tried before a jury, which returned a verdict for Ford. Soileau argues on appeal that the trial court committed errors in both its evidentiary rulings and its jury instructions. While some of Soileau's contentions have apparent merit, we find, as urged by Ford, that the court should have granted Ford's motion for a directed verdict, and since this finding is dispositive of Soileau's appeal, we need not formally address his allegations of error.

In order to prevail on a claim for damages for injuries arising from a defective product, a plaintiff under Louisiana law has the burden of proving both that the product was defective and that his injuries were caused by the defect. *Bernard v. Cessna Aircraft Corp.*, 614 F.2d 1075, 1078 (5th Cir. 1980); *Perez v. Ford Motor Co.*, 497 F.2d 82, 86 (5th Cir. 1974); *Weber v. Fidelity & Casualty Insurance Co.*, 259 La. 599, 250 So.2d 754, 755 (La.1971). While we have some doubt about the sufficiency of Soileau's proof of a defect, we have little doubt about the insufficiency of his proof that the alleged defect caused his injuries.

The only evidence of causation that Soileau adduced was his own testimony that he hit his head after being thrown into the back seat and that he did not feel pain until after he hit his head in the back seat. Given the other evidence presented during the trial, we find that, under the directed verdict standard of *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), this testimony does not constitute "substantial evidence" that being thrown into the back of the car caused Soileau's injuries.

If Soileau had been injured by hitting his head on the back of the car after flying backward against it, he would most probably have made contact with the back of his head and thus have sustained a hyperflexation injury, *i. e.*, one caused by the head being pushed downward toward the chest. The physician who operated on and treated Soileau, however, Dr. Goldware, an expert in neurology who appeared as a witness for the plaintiff, testified that Soileau's injury was of the hyperextensive variety, *i. e.*, one caused by the head being pushed backward toward the spinal column. Dr. Goldware also testified that Soileau's injury could have resulted simply from the impact of a car travelling backward and colliding with a fixed object. Ford's medical expert, Dr. Bralliar, described the injury to plaintiff's neck as primarily an axial loading fracture, which in general is caused by a blow to the top of the head that forces the head downward on the spine. According to Dr. Bralliar, Soileau's injury was probably the result of his hitting his head on the roof of the car. Other evidence introduced at the trial also indicated that a rear-end collision is likely to propel a front seat passenger who is not wearing a seat belt against the roof of the car. And since it was clear that the front seat of Soileau's car absorbed a tremendous impact—which indicates that it did not give way immediately upon impact—Soileau too must have been subjected to upward force.

The testimony of both medical experts, therefore, including that of the plaintiff's own physician, contradicted plaintiff's recollection of how his injury occurred. And given the traumatic circumstance of the accident, which Soileau admits left him stunned, and his consumption of alcohol prior to the accident, his recollection may have been less than totally sound. Also, given the very short amount of time that elapsed between the impact of the car upon the culvert and the materialization of the results of that impact, it probably could not have been expected that Soileau would perceive pain before he had come to rest in the back seat.

Since we find that the district court should have granted a directed verdict for Ford, the judgment it entered after the jury verdict for Ford is

AFFIRMED.